No. 24-1008

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

HELICOPTER ASSOCIATION INTERNATIONAL and SA-
FARI AVIATION dba SAFARI HELICOPTERS HAWAIʻI

*Petitioners*,

v.

FEDERAL AVIATION ADMINISTRATION and NATIONAL
PARK SERVICE,

*Respondents.*

**PETITIONERS HELICOPTER ASSOCIATION INTERNATIONAL
and SAFARI AVIATION dba SAFARI HELICOPTERS HAWAIʻI'S
REPLY BRIEF**

CALVERT G. CHIPCHASE 7757-0
LISA K. SWARTZFAGER  10867-0
1000 Bishop Street, Suite 1200
Honolulu, HI 96813-4212
Telephone: (808) 521-9200
Email: cchipchase@cades.com
lswartzfager@cades.com

Attorneys for Petitioners
HELICOPTER ASSOCIATION IN-
TERNATIONAL and SAFARI
AVIATION dba SAFARI HELICOP-
TERS HAWAIʻI

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION.................................................................1

II. ARGUMENT ....................................................................7

  A.  The Agencies Did Not Meaningfully Address the Safety Concerns Raised in Numerous Public Comments. .......................7

  B.  The Agencies Did Not Reasonably Address Comments About the ATMP's Impacts to Elderly, Disabled and Mobility Impaired Persons..................................... 17

  C.  The Agencies Fail to Overcome the Presumptive APA Remedy of Vacatur....................................................... 22

III. CONCLUSION ...............................................................25

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*Abdullah U. Am. Airlines, Inc.,*
    181 F.3d 363 (3d Cir. 1999) ........................................ 7, 24

*Am. Coll. of Emergency Physicians v. Price,*
    264 F.Supp.3d 89 (D.D.C. 2017) ................................... 22

*Arkansas v. Gresham,*
    142 S. Ct. 1665 (2022) ........................................... 3

*Ass'n of Private Sector Colleges & Universities v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ..................................... 2, 10

*Bloomberg L.P. v. Sec. & Exch. Comm'n,*
    45 F.4th 462 (D.C. Cir. 2022) ..................................... 4-5

*Del Balzo v. Dyer, No. SE-11113,*
    1993 WL 65228 .................................................. 14

*Foss v. United States,*
    623 F.2d 104 (9th Cir. 1980) ..................................... 13-14

*Gresham v. Azar,*
    950 F.3d 93 (D.C. Cir. 2020) ................................... *passim*

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392–06 (9th Cir. 1995) ................................. 24

*McDonnell Douglas Corp. v. Dep't of the Air Force,*
    375 F.3d 1182 (D.C. Cir. 2004) ................................... 11

*Nat'l Treasury Emps. Union v. Horner,*
    854 F.2d 490 (D.C. Cir. 1988) ................................... 11

*Safari Aviation v. Garvey*
    300 F.3d 1144 (9th Cir. 2002) .................................. 15, 16

*Organized Vill. of Kake v. U.S. Dept. of Agric.,*
    795 F.3d 956 (9th Cir. 2015) ................................... 5, 22-23

*Perez v. Mortgage Bankers Ass'n,*

575 U.S. 92 (2015) ........................................................... 7, 4

*Sierra Club v. Van Antwerp,*
 719 F. Supp. 2d 77 (D.D.C. 2010) ..................................... 23

*Sundance Helicopters, Inc. v. United States,*
 104 Fed. Cl. 1 (2012) ...................................................... 14

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers U. Fed. RR. Admin.,*
 988 F.3d 1170 (9th Cir. 2021) ......................................... 22

*United Food & Commercial Workers Union, Local No. 663 v. United States Dep't of Agric.,*
 532 F.Supp.3d 741 (D. Minn. 2021) .................................... 5-6, 24, 25

*United Mine Workers of America v. Mine Safety and Health Administration,*
 626 F.3d 84 (D.C. Cir. 2010) ...................................... 3, 11, 13

*United Techs. Corp. v. U.S. Dep't of Def.,*
 601 F.3d 557 (D.C. Cir. 2010) ........................................ 11

**Statutes**

5 U.S.C. § 706(2)(A) ......................................................... 5, 25

49 U.S.C. § 40101(a)(1) ...................................................... 13

49 U.S.C. § 40128(c)(2)(E) .................................................. 6

## I.    INTRODUCTION

The Federal Aviation Administration and National Park Service do not dispute that Petitioners HAI and Safari have standing to challenge the Volcano ATMP.[1] The Agencies do not dispute that the failure to meaningfully address significant public comments in an ATMP would render the ATMP arbitrary and capricious.

Instead, the Agencies' argument is based on the misunderstanding that any response to a public comment, even if unresponsive to the concerns that were raised, satisfies the Agencies' responsibility to meaningfully respond to the public comments. This is not the law.

Here, numerous comments raised serious safety concerns with the Volcano ATMP's restrictions to flight routes, altitudes, and hours of operation in light of the constantly changing weather patterns at Volcano Park and the pilot's need for maximum flexibility. *See* Dkt. 23.1 ("**Opening Br.**") at 20-23.

The Agencies argue the Volcano ATMP adequately addresses these concerns through statements in an appendix to the environmental

---

[1] Capitalized words not otherwise defined herein retain the same meaning assigned to them in Petitioners' Opening Brief, Dkt. 23.1.

assessment that the FAA's local Flight Standards District Office re-viewed the Volcano ATMP for safety concerns, several changes were made to the ATMP including adopting different minimum altitudes for helicopters flying in opposite directions to vertically separate aircraft, and if pilots encounter unsafe conditions, "they must safely exit the route and either follow another route where weather conditions allow or exit the ATMP planning area." Answering Br. at 25-26; SER-31-32.

Those statements do not meaningfully address the concerns that were raised. As a telling example, the Agencies do not even attempt to explain how changing the minimum altitudes for each direction flown on a route addresses concerns with the changing weather patterns at Vol-cano Park, the history of the routes flown by local companies for many years or the pilots' need for maximum flexibility. *See, e.g.*, *Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 449 (D.C. Cir. 2012) (agency acted arbitrarily and capriciously by summarizing public comments and providing a response that "never really answered" and "misinterpreted" the "concerns raised by the commenters").

Equally inadequate is the conclusory statement that the FAA re-viewed the Volcano ATMP for safety issues. The obligation is to address

the concerns raised. "Nodding to concerns raised by commenters only to dismiss them in a conclusory manner is not a hallmark of reasoned decisionmaking." *Gresham v. Azar,* 950 F.3d 93, 103 (D.C. Cir. 2020), *vacated as moot, Arkansas v. Gresham,* 142 S. Ct. 1665 (2022).

The same is true of the repeated refrain that pilots are responsible for safety. As detailed in the Opening Brief, putting all responsibility on the pilots fails to evaluate or even address the concerns raised. *See* Opening Br. at 25-28. An agency must address comments in more than a conclusory and unsupported manner. *See United Mine Workers of America v. Mine Safety and Health Administration*, 626 F.3d 84, 94 (D.C. Cir. 2010) (explaining that an agency's attempt to address objections "in a conclusory manner is fatal to its defense of" a rule adopted despite those objections).

Turning to the detrimental impact of the ATMP on elderly, disabled and mobility-impaired persons, the Agencies again rely on conclusory and generic statements in an appendix to the environmental assessment without actually addressing the concerns that were raised. Rather than address the concerns that many views and parts of Volcano Park are only available by the air or through hiking trails, the Agencies made generic

comments such as "NPS works to ensure that people with disabilities can participate in the same programs, activities, and employment opportunities available to those without disabilities in the most integrated setting possible." SER-16-17.

The statements do not address the Volcano ATMP or Volcano Park and its topography, terrain, and hiking trails. Noting concerns and then dismissing them in rote generic sentences fails to meet the Agencies' requirements to meaningfully address significant comments. *See Gresham*, 950 F.3d at 103 (agency's "analysis of [a] substantial and important problem" was arbitrary and capricious where it merely "not[ed] the concerns of others and dismiss[ed] those concerns in a handful of conclusory sentences").

By failing to properly respond to the significant issues raised during the notice and comment period, the Agencies' action in approving the FONSI/ROD and Volcano ATMP was arbitrary and capricious. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("An agency must consider and respond to significant comments received during the period for public comment."); *Bloomberg L.P. v. Sec. & Exch. Comm'n*, 45 F.4th 462, 476 (D.C. Cir. 2022) ("The requirement that agency action not be

4

arbitrary or capricious includes a requirement that the agency adequately explain its result and respond to relevant and significant public comments.") (internal quotations omitted).

The presumptive remedy for violation of the APA is vacatur and there is no reason to depart from the typical remedy in this case. *See* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"); *Organized Vill. of Kake v. U.S. Dept. of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015) ("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid") (internal quotations omitted omitted).

The Agencies' argument that vacatur is not needed because it can fix the issues and the potential environmental consequences outweigh the Agencies' errors is misplaced. *See* Answering Br. at 48-49. Based on the record, the Agencies did not adequately address serious safety issues and important impacts to identified population groups that were raised in hundreds of comments. *See infra*, at Section II.A. "The purpose of a remand without vacatur in this case would be to ensure that the agency meaningfully considers the comments it disregarded[.]" *United Food &*

*Commercial Workers Union, Local No. 663 v. United States Dep't of Agric.*, 532 F.Supp.3d 741, 779 (D. Minn. 2021). Vacatur would restore the interim operating authority that existed for many years prior to June 16, 2024.[2]

Vacating the FONSI/ROD and Volcano ATMP and returning to the interim operating authorities that existed for many years prior to the ATMP's effective date will ensure safety is not compromised while the Agencies follow the proper procedures and, among other things, seriously consider the safety issues raised by numerous public comments and adverse consequences of the restrictions in the Volcano ATMP to elderly, disabled, and mobility-impaired persons.

For this reason, the FONSI/ROD and Volcano ATMP should be vacated, and the Court should direct that and Safari and HAI's other members are allowed to conduct air tours in accordance with the interim operating authorities until a new ATMP has been adopted following meaningful consideration of the issues raised by the public comments.

---

[2] The Interim Operating Authorities for Volcano Park terminated by operation of law June 16, 2024—180 days after the establishment of the ATMP. 1-ER-076 (citing 49 U.S.C. § 40128(c)(2)(E)).

## II.   ARGUMENT

### A. The Agencies Did Not Meaningfully Address the Safety Concerns Raised in Numerous Public Comments.

The public comments discussed in the Opening Brief raised specific concerns with how the restrictions in the Volcano ATMP raise serious safety concerns in light of the weather patterns at Volcano Park. The Agencies do not dispute safety is a significant concern.[3] *See* Opening Br. at 23; *see also Abdullah U. Am. Airlines, Inc.,* 181 F.3d 363, 368 (3d Cir. 1999) ("Congress's purpose in enacting the [Federal Aviation Act] was to promote safety in aviation and thereby protect the lives of persons who travel on board aircraft.") (internal quotations omitted).

Those safety concerns include that despite the preexisting flight routes and altitudes being in place for years and well understood by the industry, the proposed ATMP would relocate, constrict and combine flight routes and make substantial changes to flight altitudes that would

---

[3] The Agencies assert they were "under 'no obligation' to respond to 'all the specific issues raised in comments.'" Answering Br. at 35. The Agencies were under an obligation to respond to significant issues, which include repeated and specific safety concerns discussed. *See* Opening Br. at 16-19; *see Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015) ("An agency must consider and respond to significant comments received during the period for public comment.").

7

collectively result in severe aviation safety implications.[4] *See* Opening Brief at 19-20 (citing 2-ER-235). Commentators raised numerous concerns that the restrictions in the Volcano ATMP have serious safety implications when considered in light of the weather patterns over Volcano Park. *See* Opening Br. at 20-23.

Among other things, the comments explain that "[**f]orcing pilots to fly in fixed narrow routes and at higher altitudes than are currently allowed makes it difficult to adjust to constantly changing weather patterns**." ER-278-283 (emphasis added).[5] Other comments explained that "[t]**he weather patterns at [Volcano] Park are dynamic, and pilots need flexibility** to make safe decisions and options **for choosing their routes and altitudes**. *See* 2-ER-311-316; 2-ER-318-320; 2-ER-322-324 (emphasis added).[6] Other comments included the following:

---

[4] The Agencies assert that "the record demonstrates that the Agencies studied operators' historic flight paths in developing the ATMP, see 1-ER-8, 10; SER-64-66." Answering Br. at 36. None of the record cites support that the Agencies considered the effect of limiting and restricting the historic flight paths on safety. *See* 1-ER-8, SER-64-66.

[5] *See* Opening Br. at 20 for additional citations to the record.

[6] *See* Opening Br. at 20-21 for additional citations to the record.

- **"[I]increasing the minimum flight altitude** from 500 feet AGL to 1,500 feet AGL [] **does not provide adequate safe options for navigation in typical weather patterns** that exist in the park." 2-ER-235-254 (emphasis added).[7]

- "Changing the areas that pilots are allowed to fly will force pilots into making uncomfortable decisions **in the event of poor weather**. Clouds change quickly over Volcano National Park. By restricting the area for air tours, **pilots are faced with making quicker weather decisions with little flexibility**. This is extremely dangerous." 3-ER-523 (emphasis added).

- **Pilots need to have flexibility in making decisions when it comes to safety of flight**. **The weather here on island is constantly changing**. Restricting pilot[']s route of flight in such a diverse climate is a recipe for disaster. Restricting the hours of operation is another unrealistic regulation because of the unique conditions we have on the island." 3-ER-620 (emphasis added).

*See* Opening Br. at 20-22 (citing additional comments).

In asserting that they complied with the APA, the Agencies rely on statements that changes were made to the Volcano ATMP to adopt different minimum altitudes for helicopters flying in opposite directions to vertically separate aircraft, the FAA reviewed the ATMP for safety concerns and that pilots should deviate from flight paths if necessary to avoid any safety issues. Answering Brief at 24-30. A review of these statements establishes the Agencies' generic comments about safety did not

---

[7] *See* Opening Br. at 21 for additional citations to the record.

meaningfully and substantively address the safety concerns raised in numerous public comments.

First, the Agencies rely on a statement that the FAA's local Flight Standards District Office reviewed the safety related comments and adopted "different minimum altitudes for helicopters flying in opposite directions on the Coastal Route to vertically separate aircraft and 'deconflict the airspace'" and detailed additional communication call-out requirements to enhance situational awareness to pilots flying in the area. Answering Br. at 26 (citing 1-ER-43-44). This change may respond to other concerns, but it does not respond to the hundreds of comments raising concerns about the danger of the restrictive routes, altitudes, and flying times in light of the typical weather at Volcano Park, pilots' need for flexibility or the fact that the Volcano ATMP substantially changed and limited the routes that had been flown by the industry for many years. A change to address a distinct concern is not a meaningful and substantive response to other concerns. *Duncan*, 681 F.3d at 449 (agency acted arbitrarily and capriciously by summarizing public comments and providing a response that "never really answered" and "misinterpreted" the "concerns raised by the commenters").

Nor are the concerns addressed through a mere statement that the ATMP was reviewed for safety. The Agencies pointed to no analysis as to the safety of the restrictions in the Volcano ATMP in light of the weather patterns at Volcano Park. Instead, the Agencies state that the Court should defer to its expert opinion the Volcano ATMP is safe. Answering Br. at 20, 30-31. The Agencies are mistaken. In reviewing agency action, the Court cannot "defer to the agency's conclusory or unsupported suppositions." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010) (quoting *McDonnell Douglas Corp. v. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004)). An agency's appeal to its "expert judgment" is unavailing if it does not "point ... to any data of the sort it would have considered if it had considered [the issue] in any meaningful way." *Nat'l Treasury Emps. Union v. Horner*, 854 F.2d 490, 499 (D.C. Cir. 1988).

Moreover, under the APA, an agency must address comments in more than a conclusory and unsupported manner. *See United Mine Workers of America*, 626 F.3d at 94 (explaining that an agency's attempt to address objections "in a conclusory manner is fatal to its defense of" a rule adopted despite those objections); *McDonnell Douglas Corp.,* 375

F.3d at 1187 (D.C. Cir. 2004) (holding that reviewing court does "not defer to the agency's conclusory or unsupported suppositions").

Second, the Agencies rely on statements that the pilot-in-command can deviate from the prescribed routes and altitudes if necessary for safety reasons. The ATMP provides, "[u]nder FAA regulations, the pilot-in-command is always required to take action to ensure the safe operation of the aircraft." 1-ER-048. Buried in the appendices to the environmental assessment, the Agencies repeat the sentiment that safety is the pilot's responsibility, asserting:

> Operators may not deviate from the designated routes and altitudes except as necessary for safe operation of an aircraft as determined under Federal Aviation Regulations requiring the pilot-in-command to take action to ensure the safe operation of the aircraft. The pilot-in-command should return to the designated route and altitude as soon as safely possible after the hazard has passed.
>
> As stated in the ATMP, if pilots are on or entering a route and encounter weather that does not allow them to proceed further along the route at the prescribed altitude, they must safely exit the route and either follow another route where weather conditions allow or exit the ATMP planning area.

SER-31-32.

In other words, the Agencies' answer to the safety concerns related to the unique and changing weather patterns in Volcano Park created by

12

the restrictions in the Volcano ATMP is that safety is the pilot's responsibility. Under the Agencies' logic, the Agencies would never need to seriously consider issues raised about the safety of routes, required altitudes, and timing of flights because a pilot can deviate for safety reasons.

The ATMP creates significant safety concerns. The Agencies cannot put on pilots the burden of addressing the concerns that the Agencies have created. An agency must address comments in more than a conclusory and unsupported manner. *See United Mine Workers of America*, 626 F.3d at 94. The Agencies' conclusory response fails to address or consider, among other things, that less-restrictive options would allow pilots flexibility to choose safe routes, altitudes, and flying times based on the weather conditions at any particular time.

The FAA repeatedly has emphasized that safety is its top priority. If safety is the top priority, safety concerns warrant more than telling pilots to sort out the consequences of unsafe conditions created by the ATMP. *See, e.g.,* 49 U.S.C. § 40101(a)(1). Courts have rejected the FAA's attempts to place all blame of an aviation accident on the pilot. *See, e.g.*, *Foss v. United States*, 623 F.2d 104, 105 (9th Cir. 1980) (rejecting FAA's attempt to shift blame for crash to pilot by arguing there was

13

contributory negligence as a matter of law because the pilot did not avoid the crash).

Furthermore, as detailed in the Opening Brief, while putting all the responsibility on the pilot to deal with the problems created by the Volcano ATMP, the Agencies ignore potential consequences for deviations and the impact that such consequences may have on aviation safety. *See* Opening Br. at 26-27; *see also, e.g.*, *Sundance Helicopters, Inc. v. United States*, 104 Fed. Cl. 1, 4 (2012) ("Specific flight plans are required and enforced by the FAA and National Park Service within the Grand Canyon. Deviating from these paths for any reason other than safety can lead to a violation for the pilot, who can face fines and license forfeiture."); *Del Balzo v. Dyer*, No. SE-11113, 1993 WL 65228 (National Transportation Safety Board Mar. 4, 1993) (upholding FAA ruling that deviation was not necessary despite pilot's assertion that deviation was necessary for the safe operation of the flight "due to the approach of threatening weather"). A pilot should never be distracted by the thought of whether they should deviate and if they will be able to satisfy the FAA with their justification. At a minimum, the potential consequences for deviation should be considered when punting all responsibility for safety to pilots.

14

The Agencies' reliance on *Safari Aviation v. Garvey*, 300 F.3d 1144 (9th Cir. 2002), is misplaced. That case involved rulemaking proceedings over the course of six years. The Court held that the FAA's failure to examine Safari's comments before extending the initial rule was harmless under the circumstances. *Id*. at 1152. The Court explained that Safari's comments on the rule were focused on safety aspects of the 1,500-foot minimum altitude flight requirement, which "had been extensively commented on and discussed" in promulgating the initial rule. *Id*. Among other things, the FAA had explained that it had mitigated the problem by allowing selected deviations on a case-by-case basis, the FAA had granted deviations to the majority of air tour operators in Hawaii, and "[s]afety is not compromised . . . because of additional safety measures, including careful FAA screening of operators before they are granted a deviation." *Id*. at 1148, 1152.

The FAA had also discussed and commented on similar comments made by another air tour operator in promulgating the final rule. The court explained,

> The FAA summarized the numerous safety concerns which
> were raised regarding this requirement, and explained in re-
> sponse that it believed that the requirement would improve
> safety by giving pilots more time to react to emergency

15

situations. It is reasonable to believe that pilots of higher fly-
ing aircraft will have more time to locate a suitable landing
site in an emergency, and will be better able to prepare and
instruct passengers.

*Id.* at 1151.

There is nothing similar in the Volcano ATMP record. Instead, the
Agencies merely state that pilots are responsible for safety and can devi-
ate from flight routes for safety reasons.

This case is more like *Gresham v. Azar,* 950 F.3d 93 (D.C. Cir. 2020).
In *Gresham,* the Secretary of Health and Human Services approved a
request for Arkansas that introduced several new requirements and lim-
itations for Medicaid coverage in the state. *Id.* at 96. Commenters raised
concerns about the loss of Medicaid coverage that would result from the
approval. *Id.* at 99-102. The court concluded that "**the Secretary's anal-
ysis of the substantial and important problem**" consisted merely of
"**not[ing] the concerns of others and dismiss[ing] those concerns
in a handful of conclusory sentences**." *Id.* at 103 (emphasis added).
The analysis therefore did not constitute reasoned decision making and
the agency action was arbitrary and capricious. *Id.*

Similarly here, the Agencies' failure to meaningful consider the
safety implications of the restrictive routes, altitudes, and timing of

16

flights in light of the weather conditions at Volcano Park, pilots' need for maximum flexibility, and history of routes flown demonstrates a lack of reasoned decision making that is arbitrary and capricious. *See id.*; Opening Br. at 19-29.

**B. The Agencies Did Not Reasonably Address Comments About the ATMP's Impacts to Elderly, Disabled and Mobility Impaired Persons.**

The Agencies also failed to meaningfully address the comments about the ATMP's impacts to elderly, disabled and mobility-impaired persons.

Numerous comments raised concerns that the severe restriction in allowed flights (going from 24,880 allowed flights with 11,376 average flights to only 1,548 allowed flights, *see* 1-ER-009, 1-ER-018, 1-ER-056) would have an adverse impact on elderly, disabled and mobility-impaired persons who would not otherwise be able to experience aspects of the park that they can experience from an air tour. *See* Opening Br. at 30-34.

The Agencies' argue that they adequately addressed these comments by "detail[ing] how [they have] developed extensive accessible Park facilities on the ground, as well as elaborate programs to make the Park accessible." *See* Answering Br. at 42 (citing SER-16-17). This

17

assertion is belied by the portion of the record that they cite, which contains the following statement:

> Air tours are only one of many ways for a person with disabilities to experience a national park. If an ATMP reduces or eliminates air tours, a person with disabilities would still be able to experience a national park. The NPS works to ensure that people with disabilities can participate in the same programs, activities, and employment opportunities available to those without disabilities in the most integrated setting possible. Alternative means of accessing facilities, programs, and services are provided when an accessible direct experience cannot be provided. Accessibility solutions are developed in consultation with the disability community and various partners including NPS concessioners and commercial service operators. The NPS has a team dedicated to breaking physical and programmatic barriers to make parks more inclusive for people with sensory, physical, and cognitive disabilities. The team includes regional accessibility coordinators who work to make sure that NPS staff have the tools and training necessary to provide accessible and inclusive outdoor recreation and interpretation opportunities for park visitors and employees alike.[8]

SER-16-17.

---

[8] The Agencies assert Petitioners are not allowed to make arguments based on "the Comment Summary Report or FAA's changes to the final ATMP[.]" Answering Br. at 28. The Agencies made arguments in Opposition based on these items. Thus, it is proper for Petitioners to address and rebut those arguments in its Reply Brief. *See* Federal Rule of Appellate Procedure Rule 28(c) ("The appellant may file a brief ***in reply to the appellee's brief***.") (emphasis added).

This generic response is not tailored to the Volcano ATMP.[9] The response does not consider the *Volcano Park* and does not address the concerns raised by commentators that air tours allow elderly, disabled and mobility-impaired persons to view parts of Volcano Park that are only otherwise accessible by hiking trails. For example, public commentators stated the following.

- "Visitors taking advantage of air tours benefit **by avoiding . . . walking trails that are inaccessible for the handicapped or elderly**." *See* 2-ER-236-243 (emphasis added).[10]

- "Some [visitors] are older or handicapped and **can't hike or take long walks to enjoy the natural beauty of Hawaii's volcanos**." 2-ER-310 (emphasis added).

- "We flew over the volcanoes on our trip to Hawaii, and that was one of the main reasons we went. … **I am too told [] to hike [] and my asthma prevents me from doing so**." 2-ER-363 (emphasis added).

---

[9] Indeed, it is nearly identical to an answer to a "Frequently Asked Question" on NPS's "National Parks Air Tour Management Program" website, and repeated in other ATMPs. *See* https://www.nps.gov/subjects/sound/air-tours-program.htm#:~:text=How%20will%20visitors%20with%20disabilities,to%20experience%20a%20national%20park at response to "How will visitors with disabilities be impacted by Air tour Management Plans?"; *see also, e.g.*, Final Air Tour Management plan for Bandelier National Monument, *available at* https://parkplanning.nps.gov/document.cfm?parkID=27&projectID=103440&documentID=135262.

[10] *See* Opening Br. at 31 for additional citations to the record.

- "[R]estricting air tours unnecessarily restricts accessibility to the handicapped and elderly. …. **My sister is handicapped and if not by helicopter then how?**" 2-ER-357 (emphasis added).

- "**As a handicapped woman, I'd have been unable to visit and enjoy Volcanoes National Park**. Flying over the lava vents . . . was the reason my husband and I traveled to Hilo from Oahu." 3-ER-416 (emphasis added).

- "**Helicopter tours provide a vital link to our nature wonders to those of us that are handicapped or too old to hike a trail**. Depriving members of the handicapped community **access to view** the extended beauty of our National Parks that helicopter tours provide is wrong." 3-ER-513 (emphasis added).

- "I am a 63 year old and have an 87 year-old mother. We had the pleasure of an air tour[.] If not for [this air tour], we would not have had a truly fantastic experience, with **awesome views that can only be seen from the air if you are handicapped**." 3-ER-527 (emphasis added).

- "'My cousin came to visit (he has mobility issues) and **was able to experience the park as well as the beauty of our waterfalls and shorelines from the air in a way he would never be able to from any ground tour**." 3-ER-582 (emphasis added).

*See also* Op. Br. at 30-34 (citing additional comments).

The Agencies ignored the actual issues raised such as many of the views over Volcano Park can only be experienced by air or hiking trails that are not accessible to the elderly, disabled, and persons with mobility impairments. Instead, the Agencies responded with a generic statement about how "NPS works to ensure that people with disabilities can partic-ipate in the same programs, activities, and employment opportunities

20

available to those without disabilities in the most integrated setting possible." SER-16-17.

This statement does not address the concerns that many views at Volcano Park are only available by the air or through hiking trails. The Agencies did not address the actual topography, terrain, and hiking trails at Volcano Park and did not even attempt to argue that the elderly, disabled, or persons with mobility-impairments can otherwise access the hiking trails at Volcano Park. The Agencies did not address any particular alternate means of accessibility at Volcano Park.

Noting concerns and then dismissing them in a handful of generic sentences that do not address the problem fails to meet the Agencies' requirements to meaningfully address significant comments. *See, e.g.*, *Gresham*, 950 F.3d at 103 (agency's "analysis of [a] substantial and important problem" was arbitrary and capricious where it merely "not[ed] the concerns of others and dismiss[ed] those concerns in a handful of conclusory sentences").

To the extent the Agencies argue that there are still some air tours available, the Agencies did nothing to address what the availability of flights might be in light of the significant reduction from 11,376 average

annual tours operated to a limit to 1,548 annual tours, which may only occur on certain days at certain times. *See* Opening Br. at 11-12.

Where an agency fails to "examine[] the relevant data and articulate[] a satisfactory explanation for [its] decision, including a rational connection between the facts found and the choice made," the decision is arbitrary and capricious. *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers U. Fed. RR. Admin.,* 988 F.3d 1170, 1182 (9th Cir. 2021) (citation omitted).

Here, the Agencies' response does not seriously respond to the concerns raised and is therefore arbitrary and capricious. *Am. Coll. of Emergency Physicians v. Price*, 264 F.Supp.3d 89, 94 (D.D.C. 2017) ("Th[e Agency's] answer does not seriously respond to the actual concerns raised about the particular rates, and it ignores altogether the proposed alternative of using a database to set payment. This failure to respond was arbitrary and capricious.") (internal footnote omitted).

## C. The Agencies Fail to Overcome the Presumptive APA Remedy of Vacatur.

The Agencies have not overcome the presumption that vacatur is the appropriate remedy for a violation of the APA. *See Organized Vill. of Kake v. U.S. Dept. of Agriculture*, 795 F.3d 956, 970 (9th Cir. 2015)

("Ordinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid") (internal quotations omitted); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 78 (D.D.C. 2010) ("[B]oth the Supreme Court and the D.C. Circuit Court have held that remand, along with vacatur, is the presumptively appropriate remedy for a violation of the APA.").

"The decision whether to vacate depends on the seriousness of the order's deficiency . . . and the disruptive consequences of an interim change that may itself be changed." *Van Antwerp*, 719 F.Supp.2d at 78 (citation omitted). These considerations support vacatur.

The Agencies argue that "any purported errors in the Agencies' decision are not sufficiently serious to require vacating the ATMP because the Agencies could cure them on remand with further explanation" and "the disruptive environmental consequences of vacatur would outweigh the seriousness of any possible agency errors. Answering Br. at 48-49.

The Agencies are required to *meaningfully* consider and respond to the significant issues discussed herein, including significant safety concerns. Based on the record, serious safety issues raised in hundreds of comments were not thoroughly evaluated. "The purpose of a remand

without vacatur in this case would be to ensure that the agency meaningfully considers the comments it disregarded[.]" *United Food & Commercial Workers Union, Local No. 663 v. United States Dep't of Agric.*, 532 F.Supp.3d 741, 779 (D. Minn. 2021). The seriousness of aviation safety further supports remand with vacatur. *See, e.g.*, *Abdullah U. Am. Airlines*, *Inc.*, 181 F.3d 363, 368 (3d Cir. 1999) ("Congress's purpose in enacting the [Federal Aviation Act] was to promote safety in aviation and thereby protect the lives of persons who travel on board aircraft.") (internal quotations omitted).

There is nothing to support the assertion that there would be disruptive consequences of vacatur. Vacatur would merely restore the interim operating authorities that existed for many years prior to June 16, 2024. Regarding the purported magnitude of environmental harm from vacatur, the Agencies rely on a case where vacatur of a listing decision would risk extinction of a snail species. Answering Br. at 49 (citing *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995). The Agencies have not pointed to any similar dire consequences from vacatur.

Here, there is no legally adequate reason "to depart from the normal APA remedy of vacatur." *United States Dep't of Agric.*, 532 F.Supp.3d 741, 781. Accordingly, the Court should vacate the Volcano ATMP and direct that and Safari and HAI's other members are allowed to conduct air tours in accordance with the interim operating authorities that were in effect when the Volcano ATMP was issued.[11] *See* 5 U.S.C. § 706(2)(A); Opening Br. at 38.

## III.   CONCLUSION

For the foregoing reasons, the Petition for Review should be granted, the Volcano ATMP should be held to violate the APA, the Volcano ATMP should be vacated and the interim operating authorities that should control until a new ATMP has been adopted following the proper procedures.

---

[11] The Agencies should be required to take any predicate action to restore the interim operating authorities of Safari and HAI's other members such as reinstating the Operations Specifications that existed prior to the issuance of the Volcano ATMP.

DATED: Honolulu, Hawaiʻi, October 11, 2024.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Lisa K. Swartzfager*

CALVERT G. CHIPCHASE
LISA K. SWARTZFAGER
Attorneys for Petitioners
HELICOPTER ASSOCIATION IN-
TERNATIONAL and SAFARI
AVIATION dba SAFARI HELICOP-
TERS HAWAIʻI

26

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

9th Cir. Case No. 24-1008

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

DATED: Honolulu, Hawaiʻi, October 11, 2024.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Lisa K. Swartzfager*
CALVERT G. CHIPCHASE
LISA K. SWARTZFAGER
Attorneys for Petitioners
HELICOPTER ASSOCIATION IN-
TERNATIONAL and SAFARI
AVIATION dba SAFARI HELICOP-
TERS HAWAIʻI

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

9th Cir. Case Number(s): 24-1008

I am the attorney or self-represented party.

This brief contains 5,162 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief (select only one):

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (*select only one*):

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated __.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

DATED: Honolulu, Hawai'i, October 11, 2024.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Lisa K. Swartzfager*
CALVERT G. CHIPCHASE
LISA K. SWARTZFAGER
Attorneys for Petitioners
HELICOPTER ASSOCIATION IN-
TERNATIONAL and SAFARI
AVIATION dba SAFARI HELICOP-
TERS HAWAI'I